John R. KAUFFMAN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Oct. 18, 1982.

Decided: Nov. 3, 1982.

Edmund D. Lyons, Wilmington, for appellant.

Kathleen A.T. Irwin, Deputy Atty. Gen., Wilmington, for appellee.

Before HERRMANN, C.J., HORSEY and MOORE, JJ.

MOORE, Justice:

In this appeal, the defendant seeks reversal of his convictions for First Degree Reckless Endangering (11 *Del.C.* § 604) and the related offenses of Second Degree Conspiracy (11 *Del.C.* § 512) and Possession of a Deadly Weapon during the Commission of a Felony (11 *Del.C.* § 1447) because of misleading jury instructions which implied that the judge had certain discretion in imposing sentence upon a conviction of Possession of a Deadly Weapon.[1] We agree with the defendant and reverse his convictions on all three charges.

1. 11 *Del.C.* § 1447 provides in pertinent part:

"(a) A person who is in possession of a deadly weapon during the commission of a felony is guilty of possession of a deadly weapon during commission of a felony.

Possession of a deadly weapon during commission of a felony is a class B felony.

(b) Notwithstanding § 4205 of this title, the minimum sentence for a violation of this section shall be not less than 5 years which minimum sentence shall not be subject to suspension and no person convicted for a violation of this section shall be eligible for parole or probation during such 5 years.

(c) Any sentence imposed upon conviction for possession of a deadly weapon during the commission of a felony shall not run concurrently with any other sentence. In any instance where a person is convicted of a felony, together with a conviction for the possession of a deadly weapon during the commission of such felony, such person shall serve the sentence for the felony itself before beginning the sentence imposed for possession of a deadly weapon during such felony."

## I.

The defendant, John R. Kauffman, and a companion, Robert McCurdy, had been involved in a near-miss traffic incident apparently caused by a stranger, Richard Russell. Following the incident, Kauffman and McCurdy followed Russell to the house of Russell's stepfather, Lawrence Casula. An argument developed, and Casula brought an unloaded shotgun from the house and waved it in the air. Kauffman and McCurdy departed, but later returned with a shotgun. As they drove past the Casula house, Kauffman, armed with the shotgun and sitting on the passenger side of the car, fired at least one shot at the house after seeing Casula standing at the window.

At trial, evidence was introduced which would have supported an acquittal of the First Degree Reckless Endangering charge and a conviction for the lesser included offense of Second Degree Reckless Endangering (11 *Del.C.* § 603), a misdemeanor. The trial judge properly instructed the jury on the lesser included offense. The jury was also advised that they could not find the defendant guilty of the weapons offense unless they found him guilty of First Degree Reckless Endangering.

One and a half hours after retiring for deliberations, the jury returned to the courtroom and asked the court, "If we should decide guilty as charged, may we request leniency?" The trial judge responded:

> The short answer to your question is no, but let me elaborate a bit on that.
>
> Our system involves the finding of guilt or innocence by the jury, and that's your task. The system also calls for the Judge, in due course, to impose sentencing. So, those are two different obligations, tasks, duties, if you will.
>
> But let me elaborate a little bit further on that. The Judge in his sentencing—this might be of some general information and assistance to you, but what I have to say has nothing to do with the defendant before the Court, Mr. Kauffman, because I don't know anything about Mr. Kauffman other than perhaps

you do from the case that we have just heard.

> But, in any case of any consequence where a person has been adjudged guilty, or pleads guilty, and the Judge comes to the sentencing day, we have prepared for the Judge a Pre-sentence report, and this is done over a period of time, and the Judge then has before him the information that has been collected, and that includes a great variety of things, and I will only mention a few.
>
> We look at things like the educational background of the young man or woman; previous record of criminal offenses, if any, military history; relationships with their family, their neighbors, the extent and seriousness of the offense involved; the information that has come to the Court through the proceedings in the Court room. I can say much more. It goes on and on.
>
> So this, in a general way, is what the Judge has to deal with when it comes to the sentencing process itself. But you as jurors are asked solely and simply to make a determination of guilt or innocence based upon the evidence you heard at Court and the law as I have given it to you.
>
> So if you would, please return to your deliberations.

After the court had given this instruction and the jury had retired from the court room, Kauffman's counsel objected, arguing that the judge's comments implied that he had broad discretion in imposing sentence. Counsel pointed out that the instruction was therefore misleading since there is no discretion in sentencing a person convicted of Possession of a Deadly Weapon during the Commission of a Felony. Ten minutes after receiving the supplemental instruction, the jury returned guilty verdicts on all three charges.

## II.

### A.

Kauffman argues that the jury's inquiry indicates that at least one juror was holding

out either for an acquittal or conviction for the lesser included misdemeanor offenses of Second Degree Reckless Endangering and Third Degree Conspiracy. The trial court's discussion of pre-sentence reports thus led the jury to believe that the court had more discretion in sentencing than it actually did, and the jury therefore reached a more severe verdict. Thus, Kauffman argues for an extension of the rule announced in *Smith v. State,* Del.Supr., 317 A.2d 20 (1974), where it was held to be reversible error for a trial judge to tell the jury about the possibility of pardon or parole while the jury was deliberating on a recommendation of mercy in a rape case.

The State contends that given the weight of the evidence against Kauffman, merely describing the sentencing procedure could not have affected the jury's verdict. Thus, the judge's comments were harmless error. The State also argues that any error was cured by the fact that the judge twice cautioned the jury during the supplemental instruction that the jury's sole function was to decide guilt or innocence. In addition, the State distinguishes *Smith* on the ground that it condemned mention of specific post-conviction procedures while nothing of that sort occurred here.

### B.

■ *Smith* identifies two evils that flow from an instruction about possible pardon, parole, or probation: (1) it invites a compromise verdict, since the jury may believe that other governmental authorities will review the case and correct any mistake it makes; and (2) the jury may be tempted to compensate for possible leniency or early prison release in the verdict it reaches. 317 A.2d at 25. Thus, any distinction between what occurred here and in *Smith* is really one without a difference. The principle announced in *Smith* is equally applicable here: the jury's task was to decide guilt or innocence, and instructions going beyond that issue distract the jury from its role and are impermissible.

■ Of course, instructions that violate this rule may be harmless under certain circumstances (*Smith,* 317 A.2d at 26), and we must determine whether that is the case here. The trial judge made two statements in the supplemental instructions, one at the beginning of his comments and one at the end, directing the jury that its duty was only to decide guilt or innocence. But those were not the limits of the court's observations, and they did not cure the initial error, since the jury clearly was given the impression that the judge had greater discretion in sentencing for the weapons offense than he actually had. Thus, the cautionary remarks did not negate the possibility that the jury's deliberations would be affected by the potential leniency to be shown by the judge after he received the presentence report.[2] In light of the evidence tending to show that Kauffman was guilty of the lesser included misdemeanors of Second Degree Reckless Endangering and Third Degree Conspiracy, and not the higher degree felonies [*see Oney v. State,* Del.Supr., 397 A.2d 1374 (1979)], we can not say that the evidence to support the felony convictions was so overwhelming as to make the trial judge's comments harmless beyond a reasonable doubt. *Smith,* 317 A.2d at 26. Because the offenses were inextricably related to each other, we must reverse all three convictions.

REVERSED.

---

**2.** A more explicit instruction, such as "sentencing is not to be considered by you," would have tended to cure any error, as would a caution that "it would be a violation of your duty as jurors if you were to convict the defendant of a felony because of a belief that other authorities will review your verdict and accord leniency to the defendant if necessary." *See, e.g., People v. Ramos,* Cal.Supr., 30 Cal.3d 553, 180 Cal. Rptr. 266, 639 P.2d 908 (1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 49, 74 L.Ed.2d 56 (U.S., 1982); *People v. Morse,* Cal.Supr., 60 Cal.2d 631, 36 Cal.Rpr. 201, 388 P.2d 33 (1964); *Smith,* 317 A.2d at 26.