# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0111-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

N.L.,

    Defendant-Appellant.

_____

Submitted September 24, 2018 – Decided October 1, 2018

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FO-13-0268-17.

Christopher T. Campbell, attorney for appellant.

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a bench trial, defendant appeals from her conviction of disorderly persons contempt, N.J.S.A. 2C:29-9(b)(2), for violating a restraining order (RO) previously obtained by her mother (the mother) under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35.[1] The judge believed the mother's testimony, concluded that defendant purposely violated the RO, and imposed a one-year probationary sentence.

On appeal, defendant raises the following points:

> POINT I
> THE [JUDGE] ERRED [BY] FINDING THE [MOTHER] CREDIBLE FOR ONE ISSUE OF FACT BUT NOT [FOR] ANOTHER.
>
> POINT II
> THE [JUDGE] ERRED [BY] DENYING . . . DEFENDANT'S MOTION FOR ACQUITTAL.
>
> POINT III
> THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT'S MERE PRESENCE IN THE PARKING LOT NEXT TO THE [MOTHER'S] CAR WAS A VIOLATION OF THE [RO].

We affirm.

---

[1] The judge acquitted defendant of petty-disorderly-persons harassment, N.J.S.A. 2C:33-4(c).

A-0111-17T1

Our review of a finding of guilt in a contempt proceeding is limited to determining "whether the record contains sufficient [credible] evidence to support the judge's conclusion." State v. J.T., 294 N.J. Super. 540, 544 (App. Div.1996) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). Factual findings of the trial judge are generally accorded deference given the judge's "opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; [the judge] has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). Nevertheless, in evaluating a trial judge's findings in a criminal case, we must ensure that the State has carried its burden of proving a defendant's guilt beyond a reasonable doubt.

Here, about six weeks after the mother obtained the RO – which barred defendant from the mother's residence and having any contact with the mother – defendant drove to the mother's residence, arriving early in the morning. The mother heard a noise, looked out the window, and saw defendant standing in the parking lot near the mother's car, which was parked directly in front of her apartment. The mother also noticed defendant's Audi convertible parked in the lot. The mother saw defendant "punch [the mother's] tire, [get] back in

[defendant's] car with a cigarette in her hand," and look the mother "in [the] face." She yelled to defendant and told her she was calling the police. When the police arrived, they informed the mother that her tire was leaking air, and it would need to be replaced.

Defendant elected not to testify at the trial. The evidence at the trial consisted of various stipulations, a photograph showing the outside of the mother's apartment, and the mother's testimony. The judge candidly acknowledged that the mother gave some inconsistent testimony. But as to the contempt charge – and the primary issue of whether defendant knowingly violated the RO – the judge assessed the mother's credibility and found that her testimony was "clear," "unwavering," and "very credible." Relying on her testimony, the judge found that

> [the mother] saw [defendant], she knows [defendant]. She knows [defendant's] car. She[,] with detail[,] described [defendant's] car as an Audi convertible. She testified that she had been in that convertible when she and [defendant] shared a better relationship, and that she had driven around with [defendant] in that car.
>
> Although it was dark, she explained that there were enough lights on the [apartment] complex building to allow her to see [defendant]. There were no obstructions to her view. She described looking out her front door windows on the second floor, down to where [defendant's] car was parked in front of [the mother's]

> space, and described exactly where she saw [defendant] next to [the mother's] car in front of her building.
>
> She described her complex as one single driveway in and out. [Defendant] would have no other reason to be there [except] to be directly in front of [the mother's] home. The [RO] . . . barred [defendant] from returning to the residence of the [mother].

Applying our deferential standard of review, we see no reason to disturb the judge's findings.

We reject defendant's argument that her "mere presence" in front of the mother's apartment was insufficient to show that she violated the RO. The RO prohibited defendant from the mother's residence and barred her from having any communication with the mother. Defendant essentially argues that her presence at the mother's apartment was of a trivial nature that did not warrant guilty findings.

To obtain a conviction of the disorderly persons offense of contempt for violating a RO issued under the Act, the State must prove beyond a reasonable doubt that defendant knowingly violated such an order. N.J.S.A. 2C:29-9(b)(2); see also State v. Finamore, 338 N.J. Super. 130, 138 (App. Div. 2001). "[T]he evidence must allow at least a reasonable inference that a defendant charged with violating a [RO] knew his conduct would bring about a prohibited result." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). N.J.S.A. 2C:2-2(b)(2)

5

states in relevant part: "A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence."

This is not a situation where defendant's actions amounted to a "trivial, non-actionable event." State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999) (stating that the defendant's dropping off the children to the front door, returning a car seat, and requesting a lawn mower – conduct not proscribed by the RO – amounted to a "trivial, non-actionable event"). We have also held – in a different context – that expressing some level of anger during a parenting exchange is insufficient to prove the requisite mental state. See Finamore, 338 N.J. Super. at 138-39 (finding the evidence insufficient to demonstrate a knowing violation of the FRO). As we have said, the Act "was not intended to attempt to regulate and adjudicate every loss of temper, angry word, or quarrel between persons connected by a familial relationship." State v. Wilmouth, 302 N.J. Super. 20, 23 (App. Div. 1997) (holding that despite the existence of a restraining order, the defendant's statement to his estranged wife in the presence of a police officer was not a violation subject to a prosecution for criminal contempt).

But unlike <u>Krupinski</u>, <u>Finamore</u>, and <u>Wilmouth</u>, here, defendant's actions were not "trivial" because the RO specifically barred her from the mother's residence. The undisputed evidence demonstrated that defendant knew her mother lived in the apartment. And yet, defendant went to the residence, exited her Audi, and stood next to the mother's car. Our Supreme Court has stated that "[a]n abuser who spontaneously appears or makes surprising communications without any legitimate purpose enhances the victim's apprehension. The fears of a domestic violence victim and the turmoil she or he has experienced should not be trivialized." <u>State v. Hoffman</u>, 149 N.J. 564, 586 (1997). Such is the case here. We therefore conclude that there exists sufficient evidence in the record to support the judge's finding that defendant is guilty beyond a reasonable doubt.

As to defendant's remaining assertion that the judge erred by denying her motion for acquittal pursuant to <u>State v. Reyes</u>, 50 N.J. 454 (1967), we reject such an argument and conclude that it is without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2). We add the following brief remarks.

We review a trial court's denial of a motion for acquittal de novo, <u>State v. Williams</u>, 218 N.J. 576, 593-94 (2014), using "the same standard as the [judge]

7

in determining whether a judgment of acquittal was warranted." State v. Ellis, 424 N.J. Super. 267, 273 (App. Div. 2012). Like the judge, we "must consider only the existence of such evidence, not its 'worth, nature, or extent.'" State v. Brooks, 366 N.J. Super. 447, 453 (App. Div. 2004) (quoting State v. Kluber, 130 N.J. Super. 336, 342 (1974)). A motion for judgment of acquittal at the close of the State's case may be granted "if the evidence is insufficient to warrant a conviction." R. 3:18-1.

> [T]he question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [Reyes, 50 N.J. at 458-59.]

Giving the State the benefit of all reasonable inferences, we conclude that the judge could find defendant guilty beyond a reasonable doubt.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0111-17T1